IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-14-23 |
| | | Civil Action No. RDB-16-1514 |
| LAMONT BONDS, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On January 16, 2014, a federal grand jury returned a six-count Indictment charging Defendant Lamont Bonds ("Defendant" or "Bonds") and Co-Defendant Marvel Alegria with one count conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), related to four robberies of various Chipotle restaurants in Maryland occurring between July 22, 2012 and November 25, 2012 ("Count One"); one count Hobbs Act robbery for the July 22, 2012 robbery, in violation of 18 U.S.C. § 1951(a) ("Count Two"); one count of possessing and brandishing a firearm in relation to a crime of violence predicated on Counts One and Two, in violation of 18 U.S.C. § 924(c) ("Count Three"); one count Hobbs Act robbery for the August 5, 2012 robbery, in violation of 18 U.S.C. § 1951(a) ("Count Four"); one count Hobbs Act robbery for the October 21, 2012 robbery, in violation of 18 U.S.C. § 1951(a) ("Count Five"); and one count Hobbs Act robbery for the November 25, 2012 robbery, in violation of 18 U.S.C. § 1951(a) ("Count Six"). (ECF No. 1.) On August 21, 2014, Bonds plead guilty to Count One and Count Three. (ECF Nos. 31; 35; 72.) On November 24, 2014, this Court sentenced Bonds to 41 months as to Count One, and 84

1

months as to Count Three to run consecutively to Count One, for a total term of 125 months, followed by 60 months of supervised release. (ECF No. 46.)

Bonds was released from custody in October 2021[1] but remains on supervised release.[2] (ECF No. 91.) Instantly before this Court are two motions filed by the Federal Public Defender on his behalf: (1) a Motion to Vacate Judgement Under 28 U.S.C. § 2255 (ECF No. 55), which was supplemented at ECF No. 70; and (2) a Supplemental Motion to Vacate Conviction Under 28 U.S.C. § 2255 (ECF No. 79), as well as various supplements (ECF Nos. 70; 74). While the arguments presented therein were previously held in abeyance pending decisions in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020), *aff'd*, 596 U.S. 845 (2022) and *United States v. Pyos*, No. 17-4269, 2022 U.S. App. LEXIS 34288 (4th Cir. Dec. 13, 2022), (ECF Nos. 75; 78; 88; 89), those cases have been resolved. Accordingly, the pending § 2255 petition is no longer appropriately held in abeyance.

While the Government has not responded to the Defendant's filings, the Court determines that a response is not necessary. Additionally, no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, (1) Bond's original Motion to Vacate Judgement (ECF No. 55) and his Supplemental Motion to Vacate Conviction (ECF No. 79)—considered in tandem and with the supplements filed (ECF Nos. 70, 74)—are both DENIED; (2) Bonds' *pro se* Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement (ECF No. 80) is DENIED AS MOOT. With respect to

---

[1] Also pending on this Court's docket is a *pro se* Motion Requesting Judicial Recommendation Concerning Length of RRC/Halfway House Placement (ECF No. 80). In light of his release from custody, that motion is now moot, and shall be denied accordingly by separate Order.
[2] A court retains jurisdiction over a section 2255 petition where the petitioner has been released but remains subject to a term of supervised release. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Bonds' § 2255 challenge to his § 924(c) conviction, this Court—having reviewed the critical record documents, including the Indictment (ECF No. 1), the Plea Agreement (ECF No. 35), and the transcript of the August 21, 2014 plea colloquy (ECF No. 71)—is satisfied that Bonds' § 924(c) charge was expressly based in part on a valid predicate offense of substantive Hobbs Act robbery set forth in Count Two of the Indictment.

## BACKGROUND

Between July 22, 2012 and November 25, 2012, Bonds and various co-conspirators engaged in a string of four armed robberies of various Chipotle restaurants in Maryland, with Bonds actively participating in all four robberies, which were all captured on video. (Plea Agreement, ECF No. 35 at 10–14.) According to the facts stipulated in Bonds' Plea Agreement, prior to July 22, 2012, Bonds discussed robbing a Chipotle restaurant with Marvel Alegria ("Alegria"), who had been the manager at one of the targeted Chipotle restaurants prior to her termination. (*Id.*) Alegria advised Bonds that Sunday nights were the best time to commit the robberies since there were no scheduled armored car pickups on Friday evening, Saturday, or Sunday. (*Id.*) Therefore, the store would have all the cash receipts from that period in a safe located in the restaurant office. (*Id.*) Alegria advised Bonds that the manager would have access to the safe, and that the best way to enter would be through the back door at closing time when the staff took out the trash. (*Id.*) Bonds and Alegria agreed to rob the Chipotle from which Alegria was fired, located in Mount Airy, Maryland. (*Id.* at 10–11.)

At some point during on July 22, 2012, Bonds and Alegria again discussed the robbery and planned to commit the robbery that night. (*Id.* at 11.) They then recruited Norman Guifarro ("Guifarro") to participate in the robbery. (*Id.*) Around 11:00 PM that evening,

3

Bonds and Guifarro entered the rear of the store when employees were taking out the trash. (*Id.*) Bonds, armed with a shotgun, forced the manager into the office at gunpoint. (*Id.*) Guifarro, armed with a knife, held the remainder of the employees on the floor in the kitchen while Bonds obtained cash from the safe. (*Id.*) After Bonds obtained the deposit bags with cash proceeds from the safe, he and Guifarro forced the employees into the bathroom, then fled. (*Id.*) Ultimately, Guifarro and Bonds obtained $5,000 in cash from the robbery which they later divided among themselves and Alegria. (*Id.*)

Sometime thereafter, the co-conspirators agreed to commit additional robberies. (*Id.* at 12.) On August 5, October 21, and November 25, 2012, Bonds, armed with what appeared to be a black semi-automatic handgun, robbed Chipotle restaurants in Hagerstown, Gaithersburg, and Damascus, Maryland, respectively, using similar methods as in the first robbery. (*Id.* at 12–13.) In the Hagerstown robbery on August 5, 2012, Bonds and another man stole $9,400. (*Id.* at 12.) In the Gaithersburg robbery on October 21, 2012, Bonds stole $7,000, and in the Damascus robbery on November 25, 2012, Bonds stole $3,500, with Alegria driving Bonds to and from the Gaithersburg and Damascus robberies. (*Id.* at 12–13.)

After detectives from the affected counties and the Maryland State Police identified Bonds and Alegria as suspects, law enforcement established surveillance at the suspects' shared residence in Montgomery County, Maryland. (*Id.* at 13.) Shortly after the Damascus robbery on the evening of November 25, 2012, detectives observed Bonds and Alegria exit the residence and drive away in Alegria's vehicle. (*Id.*) Bonds and Alegria stopped the vehicle, and detectives saw the suspects place a jacket into a sewer drain in the street. (*Id.*) The agents recovered the jacket, which matched the blue and black North Face jacket Bonds had worn

4

during the robbery just an hour before. (*Id.*) Based on this information, police obtained a search warrant for their residence and for the vehicle driven by Alegria. (*Id.*) Several items of evidence were recovered, including masks made from tee shirts consistent with the masks seen on the videos of the robberies, black knit gloves, and a black pellet gun that resembled the black pistol from the last three robberies. (*Id.* at 13–14.) After his arrest, Bonds provided a voluntary statement following a waiver of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (*Id.* at 14.) Bonds admitted that he committed the first three robberies, but initially denied any involvement in the November 25, 2012 robbery. (*Id.*) Bonds then told investigators that MS-13 gang members forced him to commit the robberies, including the fourth robbery. (*Id.*)

On January 16, 2014, a federal grand jury issued a six-count Indictment charging Bonds and Alegria with one count conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), in connection to the four robberies (Count One); one count Hobbs Act robbery for the July 22, 2012 robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); one count possessing and brandishing a firearm in relation to a crime of violence predicated on Counts One and Two, in violation of 18 U.S.C. § 924(c) (Count Three); one count Hobbs Act robbery for the August 5, 2012 robbery, in violation of 18 U.S.C. § 1951(a) (Count Four); one count Hobbs Act robbery for the October 21, 2012 robbery, in violation of 18 U.S.C. § 1951(a) (Count Five); and one count Hobbs Act robbery for the November 25, 2012 robbery, in violation of 18 U.S.C. § 1951(a) (Count Six). (ECF No. 1.) After Bonds plead guilty to Counts One and Three, (ECF Nos. 31; 35; 72), this Court sentenced Bonds to 41 months as to Count One, and 84 months as to Count Three to run consecutively to Count One, for a total of 125

months to be followed by 60 months supervised release. (ECF No. 46.)

Bonds was released from custody in October 2021 but remains on supervised release. (ECF No. 91.) Prior to his release from custody, the Federal Public Defender filed various § 2255 petitions and related filings on his behalf, including a Motion to Vacate Under 28 U.S.C. § 2255 (ECF No. 55), which remains pending on this Court's docket; a Supplemental Authority (ECF No. 70); a Motion to Supplement 28 U.S.C. § 2255 Petition (ECF No. 74); and a Supplemental Motion to Vacate Conviction Under 28 U.S.C. § 2255 (ECF No. 79), which is also pending on this Court's docket. The thrust of the argument raised therein is that Bonds' § 924(c) conviction is infirm because it was predicated in part on the invalid predicate offense of conspiracy to commit Hobbs Act robbery. While Bonds' filings were previously held in abeyance pending decisions in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020), *aff'd*, 596 U.S. 845 (2022) and *United States v. Pyos*, No. 17-4269, 2022 U.S. App. LEXIS 34288 (4th Cir. Dec. 13, 2022), (ECF Nos. 75; 78; 88; 89), those cases have been resolved. Accordingly, the pending § 2255 petition is no longer appropriately held in abeyance. As such, these § 2255 related filings are ripe for review.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which

inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## ANALYSIS

Through the pending § 2255 related filings (ECF No. 55; 70; 74; 79), Defendant Lamont Bonds challenges his § 924(c) conviction. As background, section 924(c) prohibits brandishing a firearm "during and in relation to" any federal "crime of violence." 18 U.S.C. § 924(c)(1)(A). Section 924(c) defines "crime of violence" as one "(A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "force clause"), or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). *Id.* § 924(c)(3). In *United States v. Davis*, 588 U.S. 445 (2019), the Supreme Court held that the residual clause of § 924(c)(3)(B) was unconstitutionally void for vagueness, and therefore, convictions and sentences based on the residual clause definition of "crime of violence" are invalid. *Id.* at 448.

According to Bonds, his 18 U.S.C. § 924(c) conviction is infirm because it rests in part on an invalid predicate offense: conspiracy to commit Hobbs Act robbery. While it is true that in the wake of *Johnson v. United States*, 576 U.S. 591 (2015) and its progeny the Fourth Circuit has determined that conspiracy to commit Hobbs Act robbery is not a crime of violence for purposes of § 924(c), *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019), substantive Hobbs Act robbery continues to qualify as a valid § 924(c) predicate, *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019) (holding that Hobbs Act robbery is a crime of violence which "has as an element the use, attempted use, or threatened use of physical force"

7

such that it falls within the "force clause" in § 924(c)(3)(A)); *United States v. Green*, 67 F.4th 657, 669 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 226 (2023) (reaffirming holding in *Mathis*). In any event, when a defendant's § 924(c) conviction is "expressly based on [a] valid and invalid predicate," it "remains sound." *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 819 (2022). In other words, to remain valid, Bonds' § 924(c) conviction must be expressly predicated, at least in part, on at least one substantive Hobbs Act robbery.

To determine which predicate offenses underlie Bonds' § 924(c) conviction, the Court looks to "the critical record documents," which include the Indictment (ECF No. 1), Bonds' Plea Agreement (ECF No. 35), its Statement of Facts (ECF No. 35 at 10–15), and the plea colloquy (ECF No. 71). *Crawley*, 2 F.4th at 263–64. At bottom, the inquiry centers on whether "the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty," *id.* at 265 (internal quotation marks omitted), and, if so, whether that offense is a valid predicate, *id.* at 263. This holds true where defendants only plead guilty to conspiracy to commit Hobbs Act robbery and use of a firearm in furtherance of a crime of violence, but admit to a valid predicate offense in the critical documents. *Id.* at 261–62.

To the extent that there is any ambiguity as to whether Bonds' § 924(c) charge was only based on his Count One Charge of conspiracy to commit Hobbs Act robbery, a review of the Indictment (ECF No. 1), Plea Agreement (ECF No. 35), and Rearraignment Transcript (ECF No. 71) readily resolves any debate. First, the Indictment makes clear that his 18 U.S.C. § 924(c) conviction was predicated on both the substantive Hobbs Act robbery charge in Count Two as well as the conspiracy to commit Hobbs Act robbery in Count One. (ECF No.

8

1 at 5.)  Indeed, Count One's list of "Methods and Means Used to Facilitate the Conspiracy" states that Bonds "forced entry into the rear entrances of the Chipotle restaurants, utilizing a firearm and other dangerous weapon, and restrained employees while obtaining monies from the safe."  (*Id.* at 2.)  Further, Count One expressly identifies Bonds' use of a shotgun to hold the store manager at gunpoint as an overt act[3] in furtherance of the conspiracy.  (*Id.* at 2–3.)

Turning to the Plea Agreement, the Statement of Facts bore out these allegations. (ECF No. 35 at 10–15.)  Bonds admitted that he robbed the Mount Airy Chipotle on July 22, 2012 while "armed with a shotgun."  (*Id.* at 11.)  Consistent with Count One of the Indictment (ECF No. 1 at 2–3), Bonds stipulated that he "forced the [store's] manager into [the restaurant's] office at gunpoint" and ultimately obtained $5,000 in cash from the restaurant's safe.  (ECF No. 35 at 11.)

To be sure, these actions referenced in Count One of the Indictment and the Statements of Fact in the Plea Agreement were expressly identified during Bonds' August 21, 2014 Rearraignment.  (ECF No. 71 at 35:15–36:18.)  The Court outlined the following elements as to Count One:

> [F]rom on or about July 22, 2012 through November 25, 2012 that you conspired with at least one other person to obtain property from another without that person's consent.  Secondly, that you did so by wrongful use of actual or threatened force, violence or fear.  And thirdly that as a result of your actions, interstate commerce or an item moving in interstate commerce was actually or potentially delayed, obstructed or effected in some way.  And they are the elements required to be proven by the Government with respect to Count 1 and we will hear a summary of that in a few minutes in terms of a

---

[3] "On or about July 22, 2012, LAMONT BONDS and others did forcibly threaten employees of Chipotle Restaurant during a robbery of that establishment, through the use of a firearm and other dangerous and deadly weapons, and take from the person and presence of those employees United States currency belonging to Chipotle Restaurants, said United States currency being the proceeds of Chipotle Restaurant's business activities."  (ECF No. 1 at 2–3.)  The Indictment proceeds to state the same for the August 5, October 21, and November 25, 2012 robberies.  (*Id.* at 3.)

9

> proffer an agreement pursuant to the statement of facts to which you have agreed on that.
>
> And then as to Count 3, the elements are that you committed crimes of violence specifically conspiracy to interfere with commerce by robbery as charged in Count 1 and robbery [charged] in Count 2 for which you could be prosecuted in the United States and that secondarily you knowingly brandished a firearm in furtherance of the commission of the crimes charged in Counts 1 and 2.

(*Id.* at 35:24–36:18.) The Court asked Bonds if he understood the elements of the two crimes to which he was pleading guilty, and Bonds responded: "Yes." (*Id.* at 36:19–21.)

During the Government's proffer, it explained during the first robbery, "Bonds was armed with a shotgun [and] forced the manager at gunpoint into the office." (*Id.* at 39:22–23.) Bonds confirmed the Government proffered an accurate summary of the facts, that he committed the robbery on July 22, 2012, and that he wished to plead guilty to Counts One and Three. (*Id.* at 44:7–14.) As such, the Court accepted Bonds' guilty plea as to:

> Count 1 of conspiracy to interfere with commerce by robbery, better known as Hobbs Act robbery in violation of 18 United States Code section [1951(a)] and guilty of Count 3, charging the defendant with possessing or brandishing a firearm in the furtherance of a crime of violence in violation of 18 United States Code section 924(c) and guilty verdicts will be entered as to both of those counts.

(*Id.* at 45:13–20.)

At bottom, despite Bonds' assertions to the contrary, this Court finds that the critical documents reflect that Bonds was sufficiently informed that he was pleading guilty to a violation of § 924(c) predicated on both substantive Hobbs Act robbery—a valid predicate—and conspiracy to commit Hobbs Act Robbery—an invalid predicate. As the Fourth Circuit expressly held in *Crawley*, where a defendant's § 924(c) conviction is "expressly based on [a] valid and invalid predicate," it "remains sound following *Johnson* and its progeny." 2 F.4th at

10

263. Having found that Bonds' § 924(c) conviction was independently and expressly predicated on substantive Hobbs Act robbery—an offense that categorically qualifies as a crime of violence under the "force clause" in § 924(c)(3)(A) and remains a valid predicate—the Court upholds his conviction on Count Three. Bonds asserts no other legitimate basis for collateral review under § 2255. Accordingly, Defendant's Motion to Vacate Judgement Under 28 U.S.C. § 2255 (ECF No. 55), as supplemented at (ECF Nos. 70; 74; 79), is DENIED.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this 26th day of August, 2025, that: Bond's original Motion to Vacate Judgement (ECF No. 55) and his Supplemental Motion to Vacate Conviction (ECF No. 79)—considered in tandem and with the supplements filed (ECF Nos. 70, 74)—are both DENIED; and Defendant's *pro se* Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement (ECF No. 80) is DENIED AS MOOT.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant. "A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting

*Barefoot v. Estelle*, 463, U.S. 880, 893 n.4 (1983)). Because Bonds' motions provide no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is DENIED.

    A separate Order follows.

                                       /s/
                                       Richard D. Bennett
                                       United States Senior District Judge